ALBIN C. FRISBIE, Appellant, v. F. E. SCOTT and LEON H. SCHWALD, Respondents.

Kansas City Court of Appeals, March 4, 1918.

1. CONTRACTS: Merger of into Deed: Covenants. Where a deed has been executed annd accepted as performance of an executory contract to convey real estate, the contract is *functus officio*, and the rights of the parties rest thereafter solely on the deed. And although the deed thus accepted varies from that stipulated for in the contract, as where the vendee accepts the deed of a third party in lieu of the deed of his vendor, the law remits the party to his covenants in his deed, and he cannot recover on the contract because of a failure of title by reason of a forged deed in the chain of title in the absence of fraud or mistake.

2. APPEAL AND ERROR: New Trial: Reasons: Review. Where the trial court, on motion for new trial, set aside the verdict without giving any reason therefor, the appellate court will affirm the judgment if any one of the various grounds stated in the motion are sufficient.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*Ed. E. Aleshire* for appellant.

*Robert O. McLin* for respondents.

TRIMBLE, J.—Plaintiff entered into a written contract with the defendant Scott whereby each agreed "to convey or cause to be conveyed by good and sufficient warranty deed" to the other or to his, order, different lands variously located, all of which were specified in Schedules A and B attached to said contract, the former containing lands in Colorado belonging to plaintiff, and the latter naming lands in Kansas City, in Ripley county, Missouri, and in Texas, which the defendant was to convey or cause to be conveyed

to plaintiff in exchange for his lands. The Texas lands consisted of two specified sections in Brewster county; and it is with reference to these two sections, or the failure of title thereto, that this lawsuit is concerned. Each party to the contract was to furnish to the other "full and complete abstracts of title, with the necessary certificates" etc. This was done and plaintiff's attorney examined the title to the lands he was expecting to get. The lands defendant was to convey or cause to be conveyed to plaintiff were not owned by him but stood in the name of various parties, and plaintiff knew of this fact.

By certain modifications of the contract, not necessary to explain, it was agreed that plaintiff should deliver his deed (with the name of the grantee omitted) to defendant Scott so that he might take it to Iowa and there close a deal he had with a man named Muntz by inserting Muntz's name as grantee in said deed; and defendant's deeds to the lands plaintiff was to get in exchange for his were deposited in escrow with the Missouri Savings Bank to be delivered to plaintiff if the Iowa deal went through. Among these deeds so deposited was one from G. O. Stansbury to the two sections of Texas land. The Iowa deal went through and plaintiff's deed to the Colorado land was delivered by defendant to Muntz and the Bank delivered to plaintiff the deeds held in escrow by it. The plaintiff acknowledged, in writing, and also in the testimony, that he accepted said deeds in performance of the exchange contract, among them being the Stansbury deed as aforesaid. This deed contained the usual warranty clause whereby Stansbury agreed to "warrant and forever defend" the title to the Texas land to plaintiff "against every person lawfully claiming or to claim" said land or any part thereof.

The abstract to the Texas land showed in the chain of title a deed dated January 30, 1913, from Henry W. Rokker to S. A. Jones and next a deed from Jones to Stansbury. And the abstract showed an apparently

good title in Stansbury, so that a deed from him to plaintiff, when delivered, would seem to put the title in him.

Very shortly after the exchange, however, it was discovered that the deed from Rokker to Jones was a forgery and was so declared to be by a decree of the proper Texas court. Since the deed purporting to be from Rokker (the owner) to Jones was a forgery, the deed from Jones to Stansbury conveyed no title and hence Stansbury's deed to plaintiff was worthless and conveyed no title. Therefore, under the exchange contract plaintiff got no title to the Texas lands and lost the value thereof.

He brought this suit against Scott and the defendant, Schwald, who was in fact interested with Scott in said exchange contract though not signing it. The petition was originally in two counts, the first setting up the exchange contract and the warranty in the Stansbury deed, and apparently attempts to hold defendants on the covenant of warranty in said deed on the theory that, by virtue of the contract, Stansbury's deed was their deed and his covenant their covenant. In the second count no mention was made of the covenant in the deed but the cause of action was based alone upon the violation of the contract.

At the close of all the evidence plaintiff dismissed the second count. The court overruled defendants' demurrer and the case went to the jury, the plaintiff obtaining a verdict for $2560 and interest from date of suit. This the trial court, on motion for new trial, set aside without giving his reason for so doing. Thereupon plaintiff appealed.

If any one of the various grounds stated in the motion for new trial are sufficient, this would justify us in affirming the judgment. Among these grounds is one that the "verdict is against the weight of the evidence," and since we do not know what ground the court acted upon this may have been the one. And if there is any dispute in the evidence as to a material element

in the case, this would require us to sustain the trial court's action. There is a very decided conflict in the evidence affecting the measure of damages which plaintiff claims to be the correct measure to be upheld. Hence we might very well affirm the judgment on this point alone.

However, it is asserted by plaintiff in the brief and, in a way, though not as specifically as might be desired, admitted by defendants that the real reason the court set aside the verdict was because he thought the petition stated no cause of action and that plaintiff was not entitled to obtain any recovery. Hence, we ought to dispose of this question as it will affect matters arising hereafter.

There was no charge of mistake nor was there any evidence of fraud or deceit on the part of defendants. If plaintiff's first count is a suit upon the covenant in the Stansbury deed, plaintiff's cause of action does not and cannot rest upon it alone, since the defendants did not sign the deed nor are they parties to it. The only way they can be connected with it, if at all, is by virtue of the exchange contract. But "contracts for the sale of land are in their nature executory, and generally, the acceptance of a deed in pursuance of their stipulations is prima facie an execution of the contract, and the agreement thereby becomes void and of no further effect." [Ball v. Willard, 9 Barbour, 641, l. c. 644.] On the next page the same authority says "the prima facie presumption of law, arising from the acceptance of the deed is, that it is an execution of the whole contract, and the rights and remedies of the parties, in relation to the contract, are to be determined by the deed, and the original agreement becomes void." It may be well to observe here that in the case at bar there is nothing tending in the remotest way to show that there were covenants in the contract collateral to the deeds to be delivered, and hence nothing to attack or destroy the prima-facie effect of the unconditional acceptance of Stansbury's deed under the contract. In Slocum

v. Bracy, 55 Minn. 249, l. c. 252, it is said: "No rule of law is better settled than that, where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is *functus officio,* and the rights of the parties rest thereafter solely on the deed. This is so although the deed thus accepted various from that stipulated for in the contract, as where the vendee accepts the deed of a third party in lieu of the deed of his vendor; and, as in the sales of land, the law remits the party to his covenants in his deed, if there be no ingredient of fraud or mistake in the case, and the party has not taken the precaution to secure himself by covenants, he has no remedy for his money, even on failure of title." And in Moyer v. Shoemaker, 5 Barbour 319, 321, it is said: "It is also a general rule that, while there is an open covenant of warranty, the remedy of the party must be confined to that." [See, also, Davidson v. Manson, 146 Mo. 608, 619, 620; Corrough v. Hamill, 110 Mo. App. 53; Herryford v. Turner, 67 Mo. 296.]

We are unable to see how the covenant of Stansbury in the deed, *combined* with defendant's contract to "convey or cause to be conveyed by good and sufficient warranty deed," can enable plaintiff to hold defendants, in the absence of fraud or mistake. Plaintiff, by accepting the Stansbury deed, agreed to receive the covenant of Stansbury in the place of defendants' covenant; and if the executory contract to exchange lands became *functus officio* upon the mutual delivery of the deeds, it would seem that it became as much *functus officio* for the purpose of tying defendants on to the covenant in Stansbury's deed as for any other purpose.

Nor can it be said that the contract is still alive because it has never yet been performed as to the Texas land, since the contract was to convey or cause to be conveyed by good and sufficient warranty deed and the deed from Stansbury conveyed no title, and, therefore, plaintiff can still sue for the damages caused by the

failure to perform that part of the contract. The deed from Stansbury to plaintiff was a genuine deed and was a conveyance by good and sufficient warranty deed so far as Stansbury was concerned. It was sufficient to convey whatever title he had. The only trouble is there was a defect in his *title* owing to a forged deed in the prior chain of deeds to him. In Bull v. Willard, supra, at page 645, the court, in speaking of how to determine whether covenants contained in the agreement for the sale of land are collateral to those involved in the execution of the deed, or are so connected with it as to be at an end and become merged or satisfied in the execution of the deed, said: "I have not been able to fix upon a better criterion, upon that question, than that the covenant in order to be deemed collateral and independent, so as not to be destroyed by the execution of the deed, *must not* look to, or be connected with the *title,* possession, quantity or emblements of the land which is the subject of the contract, and that if it does so, the execution of the deed, in pursuance of the contract, will operate as an extinguishment of it." [Italics ours.] So that the fact of a forged deed in the chain was a mere defect in the title to said land and did not constitute a non-performance of the contract so as to leave it unperformed and with vitality sufficient to support a cause of action for non-performance. This might be the case had Stansbury's deed to plaintiff been a forgery for then that which plaintiff accepted as a deed would have been in reality no deed at all. In that event, too, doubtless fraud would have entered into the case so as to change the entire legal situation.

We are unable to see how, in the absence of fraud or mistake, plaintiff has any right of recovery against the defendants either on the covenant in the deed or on the contract, and hence affirm the judgment for that reason as well as for the other mentioned. The other judges concur.